## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.  08-_____ |
| | : | |
| v. | : | DATE FILED:  May 21, 2008_____ |
| | : | |
| JORGE A. RODRIGUEZ SANCHEZ | : | VIOLATIONS: |
| | : | 21 U.S.C. § 846 (conspiracy to distribute controlled substances and use a communication facility to facilitate the distribution of controlled substances - 1 count) |
| | | 21 U.S.C. § 841 (distribution of controlled substances - 4 counts) |
| | | Notice of forfeiture |

## INDICTMENT

## COUNT ONE

**THE GRAND JURY CHARGES THAT:**

At all times relevant to this indictment:

## INTRODUCTION

1.      The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensing of controlled substances in the United States.

2.      Various prescription drugs were scheduled as controlled substances, pursuant to the CSA.  There were five schedules of controlled substances, denominated as Schedules I through V.  Drugs were placed on schedules based on their potential for abuse, among other things.  Drugs were placed on Schedule II when abuse of them may lead to severe psychological or physical dependence, on Schedule III when abuse of them may lead to moderate or low physical dependence or high psychological dependence, on Schedule IV when abuse of them may lead to more limited physical dependence or psychological dependence when

compared to substances on Schedule III.

3.     Federal regulations required that, for a prescription for a controlled substance to be effective, it must be issued for a legitimate medical purpose by a medical practitioner acting in the usual course of his professional practice.  A prescription not issued in this manner was not valid.  Medical practitioners issuing such purported prescriptions and pharmacists knowingly filling such purported prescriptions were subject to the penalties provided for in the CSA.

4.     Controlled substances may only be handled, imported, distributed, or dispensed by persons registered with the United States Attorney General, through the Drug Enforcement Administration ("DEA") to do so, with some exceptions, such as delivery persons. Defendant JORGE A. RODRIGUEZ SANCHEZ was not registered with the DEA to handle, import, distribute, or dispense controlled substances.

5.     Oxycodone is a Schedule II controlled substance and is commonly sold under the brand names Oxycontin, Percocet, and Endocet.

6.     Hydrocodone is an analgesic agent and a Schedule II controlled substance. When combined with analgesics such as acetaminophen, it is classified as a Schedule III controlled substance.   It is commonly sold as a Schedule III controlled substance under the brand name Vicodin.

7.     Methylphenidate is a central nervous system stimulant and Schedule II controlled substance.  It is commonly sold under the brand name Ritalin.

8.     Diazepam and alprazolam are central nervous system depressants and Schedule IV controlled substances, commonly sold under the brand names Valium and Xanax.

-2-

9.      From at least in or about June 2002 through on or about April 9, 2008, in the Eastern District of Pennsylvania, and elsewhere, defendant

## JORGE A. RODRIGUEZ SANCHEZ

conspired and agreed, with others known and unknown to the grand jury, to: (a) knowingly and intentionally distribute controlled substances, including, but not limited to oxycodone, a Schedule II controlled substance, hydrocodone, a Schedule II and III controlled substance, methylphenidate, a  Schedule II controlled substance, diazepam, a Schedule IV controlled substance, and alprazolam, a Schedule IV controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); and (b) use a communication facility in facilitating the knowing and intentional distribution of controlled substance, in violation of Title 21, United States Code, Section 843(b).

## MANNER AND MEANS

It was a part of the conspiracy that:

10.     The e-mail address pharmavet@hotmail.com was listed on websites which advertised controlled and non-controlled prescription drugs for sale.

11.     Customers sent orders for controlled substances to the e-mail address pharmavet@hotmail.com, which was used by defendant JORGE A. RODRIGUEZ SANCHEZ. Once the terms of the transactions were agreed upon, the customers were requested to wire the payments for the drugs to defendant RODRIGUEZ SANCHEZ and others known and unknown to the grand jury via Western Union and send the identification number provided by Western Union, called a Money Transaction Control Number ("MTCN"), to pharmavet@hotmail.com.

12.     Defendant JORGE A. RODRIGUEZ SANCHEZ sold controlled substances and other drugs to customers without requiring a prescription or physical examination by a licensed physician.

13.     The money sent by the customers in payment for the controlled substances and drugs was picked up by others known and unknown to the grand jury at a Western Union location in Mexico.

14.     Defendant JORGE A. RODRIGUEZ SANCHEZ caused the controlled substances and other drugs to be shipped from Southern California via the United States Mail, United Parcel Service, Federal Express, or DHL to customers in the United States, including the Eastern District of Pennsylvania.

All in violation of Title 21, United States Code, Section 846.

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about April 17, 2006, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

### JORGE A. RODRIGUEZ SANCHEZ

knowingly and intentionally distributed, and aided and abetted and willfully caused the distribution of a mixture and substance containing a detectable amount of oxycodone, that is, approximately 50 10-mg tablets of Endocet, a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

## <u>COUNT THREE</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about May 11, 2006, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

### **JORGE A. RODRIGUEZ SANCHEZ**

knowingly and intentionally distributed, and aided and abetted and willfully caused the distribution of a mixture and substance containing a detectable amount of oxycodone, that is, approximately 25 80-mg tablets of Oxycontin, a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

## <u>COUNT FOUR</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about March 1, 2007, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

### **JORGE A. RODRIGUEZ SANCHEZ**

knowingly and intentionally distributed, and aided and abetted and willfully caused the distribution of a mixture and substance containing a detectable amount of oxycodone, that is, approximately 30 80-mg tablets of Oxycontin, a Schedule II controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

## <u>COUNT FIVE</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

      On or about August 27, 2007, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

### **JORGE A. RODRIGUEZ SANCHEZ**

knowingly and intentionally distributed, and aided and abetted and willfully caused the distribution of a mixture and substance containing a detectable amount of methylphenidate, that is, approximately 240 10-mg tablets of Ritalin, a Schedule II controlled substance.

      In violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

## <u>NOTICE OF FORFEITURE</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      As a result of the violations of Title 21, United States Code, Sections

841(a)(1) and 846, set forth in this indictment, defendant

### JORGE A. RODRIGUEZ SANCHEZ

shall forfeit to the United States of America:

(A)    any property used or intended to be used, in any manner or part, to

commit, or to facilitate the commission of, such offenses; and

(B)    any property constituting, or derived from, proceeds obtained

directly or indirectly from the commission of such offenses,

including, but not limited to, the sum of $1.5 million.

2.      If any of the property subject to forfeiture, as a result of any act or

omission of the defendant:

(A)    cannot be located upon the exercise of due diligence;

(B)    has been transferred or sold to, or deposited with, a third party;

(C)    has been placed beyond the jurisdiction of the Court;

(D)    has been substantially diminished in value; or

(E)    has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendant up to the value of the property subject to

forfeiture.

-9-

All pursuant to Title 21, United States Code, Section 853.

**A TRUE BILL:**

_____

**FOREPERSON**

_____

**PATRICK L. MEEHAN**
**United States Attorney**